# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

JOHNNY L. HARDEMAN, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-16-134-JHP-SPS
 )
ANITA TRAMMELL and C. GUAY, )
 )
        Defendants. )

## OPINION AND ORDER

This action is before the Court on Defendants' Motion to Dismiss and Motion for Summary Judgment (Dkt. 26). The Court has before it for consideration Plaintiff's Petition (Dkt. 3), Defendants' motion (Dkt. 26), Plaintiff's Response to the motion (Dkt. 27), and a special report filed by the Oklahoma Department of Corrections ("DOC") at the direction of the Court in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 25).

Plaintiff is a prisoner in the custody of the DOC. Plaintiff is incarcerated at the Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma where he is serving a life sentence for Murder in the First Degree. Plaintiff claims Defendants violated his rights under the Oklahoma Constitution and Oklahoma's Religious Freedom Act. Plaintiff also alleges Defendants discriminated against him because he is transgender.

## I. STANDARD OF REVIEW

**A. Motion to Dismiss**

When a plaintiff proceeds *in forma pauperis*, a court must dismiss a complaint if it does not state a claim upon which a relief can be granted. 28 U.S.C. §1915(e)(2)(B)(ii). A plaintiff must give a "short plain statement of the claim showing that the pleader is entitled to relief"

under Fed.R.Civ.P. 8(a)(2). This statement does not need to be a detailed list of factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, to survive a motion to dismiss, the plaintiff cannot merely give broad "labels and conclusions, and a formulaic recitation of the elements of a cause of action, "but instead must plead a set of facts that at least makes the claims plausible, and raises the "right of relief above speculative level." *Id*. While a court must accept allegations in a complaint as true, this principal does not apply to legal conclusions, conclusory statements, or recitals of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will only give the presumption of truth to factual allegations, and will look to those allegations to determine whether the plaintiff has stated a plausible claim. *Kan. Penn. Gaming, L.L.C. v. Collins*, 656 F.3d 1210, 1219 (10th Cir. 2011).

**B. Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court held that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." The Court further held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Id.* In addition, the *Anderson* Court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* A movant's summary judgment burden may properly be met by

reference to the lack of evidence in support of plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

Furthermore, as described by the court in *Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526 (10th Cir. 1994), "Even though all doubts must be resolved in (the nonmovant's) favor, allegations alone will not defeat summary judgment." *Cone* at 530 (citing *Celotex*, 477 U.S. at 324). *See also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *Roemer v. Pub. Serv. Co. of Colo.*, 911 F. Supp. 464, 469 (D. Colo. 1996). Moreover, "(i)n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## II. UNDISPUTED FACTS

Reviewing the evidentiary material submitted by the parties, the Court finds that there are no material disputes as to the following facts:

In late May, or early June of 2015, Plaintiff was transferred to a new cell at OSP as a result of an assault investigation. It was determined that Plaintiff had paper material in excess of the amount allowed by policy, which is one cubic foot. Plaintiff was allowed to choose what property to keep and what property to give up, and was specifically advised on May 27, 2015, that pursuant to policy he could send the remainder of his excess property home, have it destroyed, or donated to the prison. Plaintiff was also notified that if he did not instruct the facility as to how his property should be handled, it would be destroyed, or donated within thirty (30) days. Although he filed numerous grievances, Plaintiff failed to timely provide instruction for the dispensation of his property.

Despite Plaintiff's failure to meet the deadline for disposition of his property, Defendants did not dispose of Plaintiff's religious books. Plaintiff's religious books were given to him on or about November 25, 2015.

## III. ANALYSIS

### A. Tort Claims of Intentional Destruction of Personal Property and Culpable Negligence

The Plaintiff asserts claims of intentional destruction of personal property and culpable negligence. Specifically, the allegations set forth in the Plaintiff's Petition consist of the following:

> (1) Informed the Warden, Grievance Officer and Property of my intent to file a grievance but they destroyed my property while my grievance was in process.
>
> (2) I have a Constitutional Right not to have my property destroyed. Intentionally destroyed.
>
> (3) Prison Policy OP 030120 pg. 6(E) clearly states an inmates property while it is in the grievance process. I have received evidence that my property was destroyed while in grievance process. The above mentioned policy states an inmates property will not be destroyed while in the grievance process.
>
> (4) I had several high holy days during the time my property was being held. I have evidence where I wrote the: Chaplain: property room, warden, etc…., but they all denied me my religious materials out of my property to assist me in my faith practice. Nor did they provide me with any substantive material(s). Ultimately all my religious property was destroyed.

The Oklahoma Governmental Tort Claims Act ("GTCA") is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity for its torts and the torts of its employees. Okla. Stat. tit. 51, §151 et seq.; *See also*, *Tuffy's Inc. v. City of Okla.*, 212 P.3d 1158, 1163 (Okla. 2009). The GTCA adopts and reaffirms the sovereign immunity of the state, its political subdivisions, and all employees acting within the scope of their employment. *Id.* The state and its political subdivisions consent to suit only to the extent and in the manner provided in the Act. *Id.*

In paragraph 3 of the Petition, Plaintiff alleges the Defendants were acting under color of state law at all relevant times. Plaintiff does not allege the Defendants acted in bad faith or maliciously. Accordingly, the Defendants are immune from suit for Plaintiff's state law claims of negligence and destruction of property.

Oklahoma courts have recognized a cause of action for torts of outrage, or intentional infliction of emotional distress. *See Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998). However, Plaintiff has not pled a cause of action for intentional infliction of emotional distress. Further, under the terms of the GTCA such a claim necessarily excludes good faith conduct on the part of state employees. In this regard, Okla. Stat. tit. 51, § 153(A) of the GTCA states:

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees **acting within the scope of their employment** subject to the limitations and exceptions specified in The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. **The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment.** (Emphasis added).

Okla. Stat. tit. 51, § 152(12) defines "scope of employment" as:

> . . . performance by an employee acting **in good faith** within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority. (Emphasis added).

The Oklahoma Supreme Court in *Fehring v. State Insurance Fund,* 19 P.3d 276, 283 (Okla. 2001) held that when "the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit." *Id.* (citing *DeCorte v. Robinson*, 969 P.2d 358, 362 (Okla. 1998)). The Court in *Fehring,* went on to hold that the plaintiff in that case could not recover damages from the City for a claim of malicious prosecution. The *Fehring*

court's reasoning was that if the officer's actions were in bad faith, then he was outside the scope of his employment and the City would not be liable. *Id.* at 284. The courts have continually held that pursuant to the GTCA, a political subdivision is not liable for the acts of its officers or employees when they are committed in bad faith or in a malicious manner. *Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okla. 1996); *Parker v. City of Midwest City*, 850 P.2d 1065 (Okla. 1993). Likewise, political subdivisions are immune from liability for tort claims of intentional infliction of emotional distress because the claim is one which requires proof of an element which necessarily excludes good faith conduct on the part of political subdivision employees. *See McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Ct. Civ. App. 1996).

Further, Plaintiff has failed to allege any conduct that rises to the level of intentional infliction of emotional distress. The record does not suggest any extreme or outrageous conduct on the part of the Defendants. Plaintiff was given the opportunity to determine the fate of his excess property prior to its disposition. Additionally, each of the Defendants conduct was in compliance with DOC's property policy which limits the amount of paper material, including religious materials, to one cubic foot. S.R., pg. 199 at part C. Finally, Plaintiff's religious books were returned. S.R., pgs. 261-263. As such, Defendants' motion in regard to Plaintiff's intentional tort claim against the individual Defendants is granted.

### B. Oklahoma Religious Freedom Act

The Oklahoma Religious Freedom Act ("ORFA") states that a governmental entity can only impose a substantial burden on a person's free exercise of religion if the restriction is to further a compelling governmental interest and is the least restrictive means of furthering that interest. Okla. Stat. tit. 51, §253. With regard to correctional facilities, a regulation must be considered in furtherance of a compelling interest if the religious activity poses a direct threat to the health, safety, or security of other prisoners, correctional staff or the public. Okla. Stat. tit.

51, § 254.

In this case, the DOC's property policy clearly sets forth that limiting the amount of personal property inmates may possess is a compelling interest. Specifically, the property policy explicitly states that such limitation "assists the DOC in attempting the objectives of operating in an efficient and effective manner as well as providing a safe, secure and humane environment for inmates, and protection for the public. S.R., pg. 189.

It has also been held that the DOC has wide discretion in determining what to do with the inmates assigned to it. In *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002), the Tenth Circuit explained how "it is well-settled that '[w]hile an inmate's ownership of property is a protected interest that may not be infringed without due process, there is a difference between the right to own property and the right to possess property while in prison.'" *Id*. at 1299. (citation omitted). The Tenth Circuit agreed with the lower court's reasoning; "the requirements of procedural due process were met when the prison authorities provided [the prisoner plaintiff] the opportunity to dictate where to send the "property" that the authorities had confiscated. *Id.* The Searcy Court also acknowledged prison regulations providing for the dispensation of property pursuant to policy when an inmate refuses to decide the fate of his own property. *Id.*

Finally, Oklahoma Courts have consistently recognized that "the incarceration of a convict is one of administration for an arm of the executive branch of government." *Bell v. State*, 381 P.2d 167, 173 (Okla. 1962). In fact, in *Fields v. Driesel*, 941 P.2d 1000, 1007 (Okla. 1997), the Oklahoma Court of Criminal Appeals noted that separation of powers prohibits a court from preempting an agency such as the DOC from exercising its inherent powers regarding the manner in which policy is implemented, which is vested solely in the Director and Board of the agency as opposed to the judiciary. Okla. Stat. tit. 57, §§504, 507.

Plaintiff contends that Defendants' enforcement of the DOC's property policy infringed

upon his religious rights because some of his religious books were confiscated as excess property. However, the record reveals that in late May, or early June of 2015, Plaintiff was transferred to a new cell at OSP pending a PREA investigation. S.R., pgs. 156 and 170-171. When it was discovered that Plaintiff had excess property, he was allowed to choose what property to keep and what property to send home, donate, or destroy. S.R., pgs. 237-248. *See also* S.R., pgs. 250-252. Initially, Plaintiff did not choose to keep the religious books that are the subject of this action. *Id.* Plaintiff also failed to provide for any formal dispensation of his property. *Id.* Yet, despite his running afoul of the property policy, DOC did not dispose of Plaintiff's religious books but made every effort to accommodate Plaintiff. Specifically, Plaintiff was given the three religious books that had been identified as excessive property. S.R., pgs. 257-263. *See also* Plaintiff's Property Inventory Form, S.R., pg. 302.

Because the implementation of prison policy falls within the exclusive powers of the Director and Board of the DOC, and because Plaintiff's claims are otherwise without merit, Defendants are entitled to summary judgment on this claim.

### C. DOC's Property Policy

Plaintiff contends that Defendants "violated DOC's "Inmate Property" Policy at OP-030120 Part VII(E)." Plaintiff's Petition at par. 7. However, Part VII(E) governs lost or damaged property. *See* S.R., pg. 193. Disposition of excess property is governed by Part VII. *See* S.R., pgs. 191-193. Plaintiff also alleges that he had "a constitutional right" not to have his property destroyed under the policy.

The Oklahoma Legislature has exempted the DOC from the Administrative Procedures Act. *See* Okla. Stat., tit. 75, §250.4. *See also Lockett v. Evans*, 330 P.3d 488 (Okla. 2014). The DOC's internal management procedures provide nothing more than guidance and are not designed to, and do not, confer any additional rights unto any prisoner greater than those

authorized by statute or protected by the Constitution. Instead, DOC procedures are implemented to "aspire to instruct subordinate employees how to exercise discretion vested by the state in the [Director], and to confine the authority of [department] personnel in order to avoid widely different treatment of similar incidents." *Sandin v. Conner*, 515 U.S. 472, 482 (1995).

Therefore, any proposition that the prison's internal management procedures have conferred a constitutional right upon the Plaintiff, or have the force and effect of law, has no merit.

### D. Gender Identity Discrimination

Plaintiff alleges that Defendants violated his constitutional rights under Article X, §15 of the Oklahoma Constitution, entitled "Pledge of loan or credit - Donation - Exceptions." Plaintiff also alleges that Defendants discriminated against him on the basis of his gender identity. However, Plaintiff's Petition is completely devoid of any facts that would support such allegations. Plaintiff has pled no more than labels and conclusions regarding these claims. Plaintiff must do more than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Id. Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Therefore, these claims must be dismissed as Defendants are not even on notice of the grounds upon which they rest. *Id*. at 1250.

**ACCORDINGLY**, Defendants' Motion to Dismiss and Motion for Summary Judgment (Dkt. 26) is Granted. Plaintiff's motions for injunctive relief (Dkts. 16, 31), and all remaining pending motions are Denied as moot.

**IT IS SO ORDERED this 12th day of March, 2019.**

James H. Payne
United States District Judge
Eastern District of Oklahoma